**In re Dana W. KNIGHT, Debtor,**

**Judy Pressley KNIGHT, Plaintiff,**

v.

**Dana William KNIGHT, Defendant.**

**No. C–C–82–521–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 25, 1983.

R. Lee Myers, Charlotte, N.C., for plaintiff.

R. Keith Johnson, Charlotte, N.C., for defendant.

## MEMORANDUM AND ORDER

POTTER, District Judge.

THIS MATTER coming on to be heard and being heard before the undersigned United States District Court Judge for the Western District of North Carolina on the 17th day of March, 1983, at the United States Courthouse in Charlotte, North Carolina, on the appeal of the Plaintiff from Bankruptcy Court; and,

Mr. R. Lee Myers, Attorney at Law, having appeared for the Plaintiff, and Mr. R. Keith Johnson, Attorney at Law, having appeared for the Defendant; and,

The Court having heard the oral arguments of counsel and reviewed the record and Memoranda of Law submitted, finds that the Bankruptcy Court's decision was erroneous as a matter of law and enters the following Memorandum and Order:

## DISCUSSION

In this appeal from the determination of the dischargeability of the debts of the Defendant, the following findings of the Bankruptcy Court are presented for review: (1) the Defendant's debt to pay the Plaintiff's counsel fees for the separation proceedings under the state court's order was a dischargeable debt, and (2) the Defendant's debt to pay certain joint obligations to general creditors was nondischargeable, only if the monthly loan payments converted into payments made directly to the Plaintiff after satisfaction of the loan. The Plaintiff contends that the Defendant's debts for counsel fees and the joint obligations to general creditors are nondischargeable. The Defendant contends that these debts are dischargeable.

### I. *Factual Background*

Plaintiff and Defendant were married on or about September 24, 1969; their only child was born on January 7, 1971. The Plaintiff was not employed outside the house during the marriage and had no outside income. On February 7, 1981, the Defendant abandoned the Plaintiff and the child, and on May 15, 1981, the Plaintiff filed suit in North Carolina state district court, seeking divorce from bed and board, child custody, child support, alimony *pendente lite,* permanent alimony, and attorneys' fees. On June 17, 1981, a settlement was negotiated, and counsel for the Plaintiff agreed to draft the consent order. The Defendant failed to execute the consent order, and on July 22, 1981, the Plaintiff moved that the state district court enter the unexecuted consent order; on September 4, 1981, it was so ordered.

The consent order was in essence a separation agreement that did not provide for an equitable distribution or settlement of property but ordered the Defendant to pay:

(1) child support of $300.00/mo. [Paragraph 4]

(2) permanent alimony of $50.00/mo. [Paragraph 5]

(3) debts incurred during the marriage to Master Charge; VISA/Citibank; Sears; Associates Finance; NCNB; Wickes; BB & T; HFC. [Paragraph 5, 7]

(4) additional permanent alimony following the scheduled satisfaction of the BB & T and HFC loans in the exact amount of each loan on a monthly basis. [Paragraph 5]

(5) counsel fees incurred by the Plaintiff in the amount of $200.00, for the consent decree and $100.00 for the prosecution of the motion to enter the Consent Order. [Paragraph 8]

On November 4, 1981 the Defendant was held in contempt. He was ordered incarcerated pending the payment of money, his wages were ordered garnished, and he was ordered to pay $200.00 for the Plaintiff's attorneys' fees for the contempt proceedings.

On February 12, 1982, the Defendant filed a Chapter 7 Bankruptcy petition in this district. On May 10, 1982 the Plaintiff filed a complaint to determine the dischargeability of debts pursuant to 11 U.S.C. § 523. On July 28, 1982 the Bankruptcy Court held that only the BB & T and HFC loans were in the nature of alimony, maintenance and support, so as to be nondischargeable. The Defendant's debt for the remaining joint obligations to general creditors was discharged with the debt for Plaintiff's counsel fees. The Plaintiff filed her notice of appeal on June 25, 1982, pursuant to Rule 801 of the Bankruptcy Rules of Procedure.

### II. *Payments on Behalf of the Dependent Spouse*

The Bankruptcy Reform Act of 1978 provides that a discharge of debts under the Act does not discharge any debt

"(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, [except] to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise; or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support."

11 U.S.C. § 523(a)(5) [emphasis added].

The Bankruptcy Court below held that this section "requires that the debt be *to* the spouse and *not* on her behalf." [Order ¶ 20, p. 7 (emphasis in original)]. Since there is no precedent within the Fourth Circuit, this Court will look to the detailed discussion of the issue recently provided by the Second Circuit:

"A joint explanatory statement, issued shortly before Congress passed the 1978 Act, states in part:

'If the debtor has assumed an obligation of the debtor's spouse to a third party in connection with a separation agreement . . . such debt is *dischargeable to the extent that payment of the debt by the debtor is not actually in the nature of alimony,* maintenance, or support of debtor's spouse, former spouse, or child.'

\*     \*     \*     \*     \*     \*

In that portion of the House Report immediately succeeding the language in question, the committee said: 'This provision will, however, make *nondischargeable* any debts resulting from an agreement by the debtor to hold the debtor's spouse harmless on joint debts, *to the extent that the agreement is in payment of alimony,* maintenance, or support of the spouse, as determined under bankruptcy law considerations that are similar to considerations of whether a particular agreement to pay money to a spouse is actually alimony or a property settlement.' "

*In re Spong,* 661 F.2d 6, 9–11 (2d Cir.1981) (citations omitted, emphasis added). The Court in *Spong* held that the debt in question was not "assigned to another entity," (11 U.S.C. § 523(a)(5)(A)), but was a third-party beneficiary contract "and should not be confused with an assignment." *Id.* at 10. Thus, the agreement, found by the Court to be "in payment of alimony, maintenance, or support," resulted in a nondischargeable debt, although payment was made to a third-party for the benefit of the debtor's spouse. *See also, Matter of Gwinn,* 20 B.R. 233 (Bkrtcy.App. 9th Cir.1982); *In re Schroeder,* 25 B.R. 190 (Bkrtcy.Ill.1982); *In re Harrod,* 16 B.R. 711 (Bkrtcy.W.D.Ky. 1982).

■ Until the Fourth Circuit announces its interpretation of the words "to the spouse" in Section 523(a)(5) of the Bankruptcy Reform Act, this Court will follow the Second Circuit, agreeing "that it would be exalting form over substance to fail to treat [defendant's] agreement to pay his wife's [debts] as a 'debt . . . to a spouse . . . for alimony . . . maintenance . . . , or support,' and that, therefore, it is nondis-

chargeable in bankruptcy" once the debts have been found to be "actually in the nature of alimony." *In re Spong, supra,* 661 F.2d at 10.

### III. *Counsel Fees*

The Bankruptcy Court below held that counsel fees awarded pursuant to a supporting spouse's duty of maintenance under state law would be a nondischargeable debt only if specifically delineated as alimony, maintenance, or support, or if such payments converted into alimony payments to be made directly to the dependent spouse [Order ¶ 18, p. 7].

■ Although the Bankruptcy Court rested upon the failure of the state court order to specifically designate the Plaintiff's counsel fees as "alimony", it is clear from 11 U.S.C. § 523(a)(5)(B) [Section II, *infra*], that it is the true "nature" of the debt, the substance and not the form or "designat[ion]" that will control dischargeability. This Court finds no basis in the Act for the Bankruptcy Court's requirement that the counsel fee debt must convert into a direct alimony payment upon satisfaction of the debt to be nondischargeable under Section 523(a)(5). The Court finds no supporting case law for this proposition, and none was cited in the Order below.

■ It is state domestic relations law that governs "the nature of alimony, maintenance, or support," and, thus, will determine whether a provision in a consent decree is intended to discharge the duty of support under state law.

"United States courts have no jurisdiction over divorce or alimony allowances . . . '[t]here is no federal law of domestic relations,' *DeSylva v. Ballentine,* 351 U.S. 570, 580 [76 S.Ct. 974, 979–980, 100 L.Ed. 1415] [ (1956) ], 'the whole subject of [which] belongs to the laws of the States.' *Popovici v. Agler,* 280 U.S. 379, 383 [50 S.Ct. 154, 154–155, 74 L.Ed. 489] [ (1930) ]. (quoting *Ex parte Burrus,* 136 U.S. 586, 593–594 [10 S.Ct. 850, 852–853, 34 L.Ed. 1500] [ (1890) ] ). Congress could not have intended [in enacting the 1978

Bankruptcy Code] that federal courts were to formulate the bankruptcy law of alimony and support in a vacuum, precluded from all reference to the reasoning of the well-established law of the States."

*In re Spong,* 661 F.2d 6, 9 (2d Cir.1981) [applying New York law, holding a debt for counsel fees to be nondischargeable when awarded in connection with separation or divorce proceedings]. *See also, Matter of Painter,* 21 B.R. 846 (Bkrtcy.M.D.Ga.1982).

In North Carolina, it has been held that "[a] finding that the wife ... cannot be represented in the divorce action by counsel without financial help from her husband is equivalent to a finding that she does not have sufficient means whereon to subsist during the defense of the suit *and* to defray the expenses thereof (G.S. 50–16.3(a)(2)) [grounds for alimony *pendente lite*]; and that finding is equivalent to a finding that the wife is substantially in need of support from the husband (G.S. 50–16.1(3)) [definition of dependent spouse].

*Sprinkle v. Sprinkle,* 17 N.C.App. 175, 181, 193 S.E.2d 468 (1972) [emphasis in original]. *See also Fungaroli v. Fungaroli,* 53 N.C. App. 270, 279, 280 S.E.2d 787 (1981).

■ Thus, in North Carolina, the case law indicates that the award of counsel fees in divorce and separation proceedings is determined by applying the test for alimony *pendente lite;* thus it is actually in the nature of alimony, even when *not* specifically designated as such.

"The Ninth Circuit recognized in *Jones v. Tyson,* [518 F.2d 678, 681 (9th Cir.1981)], that in some instances, the spouses may agree to consider legal fees as community liabilities and take the legal fees into account in equally dividing the community assets. In such a case, an award of attorneys' fees might be deemed to be in the nature of a property settlement and dischargeable in bankruptcy."

*Deems v. Schauer,* 470 F.Supp. 255, 256 (D.N.D.1979). Here, as in *Deems,* the award of counsel fees was made independent of any division of property.

"To hold [that the award of counsel fees was a property division] would, as concerns the instant case, be rather anomalous, since it is agreed that in the decree actually entered ... there was *no* property settlement."

*In re Birdseye,* 548 F.2d 321, 325 (10th Cir.1977) [emphasis in original].

Under the Bankruptcy Act of 1903, United States courts, applying state domestic relations law, generally held counsel fees awarded in divorce and separation proceedings to be a form of alimony and not dischargeable. *Matter of Catlow,* 663 F.2d 960 (9th Cir.1981); *DuBroff v. Steingesser,* 602 F.2d 36 (2d Cir.1979); *In re Birdseye, supra,* (10th Circuit); *Schiller v. Cornish,* 529 F.2d 1363 (7th Cir.1976); *Jones v. Tyson, supra,* (9th Circuit); *Nunnally v. Nunnally,* 506 F.2d 1024 (5th Cir.1975); and *Damon v. Damon,* 283 F.2d 571 (1st Cir.1960).

Since the enactment of the 1978 Code, the majority of decisions have been consistent with those under the prior Act. United States courts in two circuits, the Second and Ninth, have held that a debt for counsel fees is nondischargeable when awarded to the debtor's spouse in a separation or divorce action. *In re Spong, supra; Matter of Gwinn,* 20 B.R. 233 (Bkrtcy.App. 9th Cir. 1982). See also, *In re Daumit,* 25 B.R. 371 (Bkrtcy.D.Md.1982); *Matter of Rodriguez,* 22 B.R. 309 (Bkrtcy.W.D.Wis.1982); *Matter of Painter,* 21 B.R. 846 (Bkrtcy.M.D.Ga. 1982); *In re Brassard,* 11 B.R. 90, at 92–93 (Bkrtcy.N.D.Ill.1981); *In re Gilbert,* 10 B.R. 462, 464 (Bkrtcy.N.D.Ind.1981); *In re Lafleur,* 11 B.R. 26, at 29 (Bkrtcy.D.Mass 1981); *In re Whitehurst,* 10 B.R. 229, 229 (Bkrtcy. M.D.Fla.1981); *In re Dorman,* 3 Collier's Bankr.Cas.2d 497, 499–501 (D.N.J.1981); *In re French,* 9 B.R. 464, 468 (Bkrtcy.S.D.Cal. 1981); *In re Lineberry,* 9 B.R. 700, 709–10 (Bkrtcy.W.D.Mo.1981); *In re Bell,* 5 B.R. 653, 655 (Bkrtcy.W.D.Okl.1960).

■ Until the Fourth Circuit announces its position regarding the dischargeability of a debt for counsel fees awarded in a separation proceeding and the application of state domestic relations law in determining the nature of such an award, this Court

will follow the Second Circuit's holding that (1) state law must provide guidance on the "nature" of an award of counsel fees and (2) counsel fees are a nondischargeable debt when such award is in the nature of alimony or support. The Court further finds that the award in this case was in the nature of alimony since (1) it was part of a maintenance and support agreement, (2) state legislation and case law support the characterization of counsel fees as alimony, and (3) the Plaintiff would have paid counsel with funds otherwise needed for food and maintenance.

## IV. *Joint Obligations to General Creditors*

The Bankruptcy Court below held that of the eight joint obligations that the Defendant was ordered to pay by the state district court, only those that converted into direct alimony payments upon satisfaction of the debt would be nondischargeable. [Order ¶ 16, p. 5–6].

Regardless of the ultimate conversion of the loan payments, if a debt is in the nature of alimony, it will be nondischargeable under Section 523(a)(5). *In re Spong,* 661 F.2d 6, 9–11 (2d Cir.1981). In the case at bar, North Carolina law will determine what debts are in the nature of alimony, and, by statute, such debt may take various forms. Alimony may be paid by lump sum, periodic payments, or even the transfer of real or personal property. N.C.G.S. § 50–16.7(a). Thus, the fact that the Defendant was ordered to pay eight obligations, and six of the obligations were non-recurring payments, rather than ongoing indefinite periodic payments, is not determinative of the character of those payments.

In *Beall v. Beall,* 290 N.C. 669, 228 S.E.2d 407 (1976), the Supreme Court of North Carolina reviewed an award of various payments similar to those in the instant case. In *Beall,* the plaintiff sought divorce from bed and board, child custody, child support, alimony *pendente lite,* permanent alimony, and attorneys' fees.

"The sums defendant was ordered to pay fall into three categories: (1) nonrecurring, lump-sum payments for past-due debts; (2) 'annual mortgage payments and taxes which are now due and shall hereafter become due;' (3) recurring monthly payments of alimony and child support."
*Id.* at 676, 228 S.E.2d 407.

The nonrecurring payments included counsel fees, household expenses, college tuition, and other school bills past due when the defendant left the marital residence. These debts were to be paid directly to the creditors. In the Court's discussion, it considered the fairness of all the payments in light of the relative incomes, expenses, and needs of the two parties. The Court stated the applicable law as N.C.G.S. § 50–16.5(a) (determining alimony by relative earnings and expenses) and N.C.G.S. § 50–13.4(c) (determining child support by relative earnings and expenses). The Court stated the standard in alimony and child support as "a question of fairness and justice to all parties." *Id.* at 674, 228 S.E.2d 407. After enumerating the nonrecurring, lump-sum payments, the Court concluded that these "payments appear to be entirely just and reasonable." *Id.* at 676, 228 S.E.2d 407.

This Court finds the *Beall* case, when read in conjunction with N.C.G.S. § 50–16.7(a), to indicate that the courts of North Carolina treat the nonrecurring, lump-sum payments of past-due debts made directly to creditors as alimony and support payments. The alimony/support standard of fairness in light of the relative incomes of the parties is applied to nonrecurring lump-sum payments to third-parties. The fact that the *Beall* court treated the debt to general creditors identically to the debt to plaintiff's counsel lends further support to the conclusion that both debts are in the nature of alimony and nondischargeable. (See Section III, *infra*).

The United States courts that have fully discussed the issue of the dischargeability of debts arising upon separation or divorce have applied the domestic relations law of the state in which the court sits. In *Matter of Woods,* 561 F.2d 27 (7th Cir.1977), Indiana's case law was applied to analyze the nature of the debt. Indiana state courts

weigh a series of factors: (1) the location of the contractual provision creating the debt—did it arise from a property division or a maintenance and support agreement; (2) the necessity of child support; (3) the intent to balance the relative incomes of the parties. See also, *In re Maitlen,* 658 F.2d 466 (7th Cir.1981).

The Courts of North Carolina have not applied such a multiple-factor test, but if they did, the balance in the case at bar would indicate that the payment of the debt in question was in the nature of alimony: (1) the consent decree that created this debt made no division or distribution of property; its provisions were limited to child support, alimony, and other maintenance payments; (2) there was a child to be supported, a factor considered in the overall maintenance needed by the family; (3) the wife had no outside income; thus, balancing the incomes was a major goal of the consent decree; the alimony paid to the debtor's spouse directly, $50.00/month, was clearly inadequate for the wife to maintain the household debts.

In conclusion, the Court finds as a matter of law that the debts jointly owed to the general creditors and the debt owed to the Plaintiff's attorney, arising from the consent decree of the state district court separation proceedings are in the nature of alimony and support and are therefore nondischargeable debts under 11 U.S.C. § 523(a)(5).

IT IS, THEREFORE, ORDERED that the decision of the Bankruptcy Court in the above-captioned matter is *REVERSED.*